### HATTIE HOLCOMB v. STATE.

No. A-2530.   Opinion Filed July 31, 1917.

(166 Pac. 754.)

1.   **VENUE—Change of Venue—New or Amended Information—Where Filed.**  The same rules of procedure which obtain in prosecutions by indictment shall obtain in prosecutions by information, and where a change of venue is had, a new or amended information cannot be filed in the county to which the case is removed; such information can be lawfully filed only in the county where the original information was first filed, and the court from which the action is removed must, upon the application of the county attorney, order the same to be transmitted by the clerk.

2.   **SAME—Effect of Failure to File.**  In this case it appears that an information was filed in the district court of Jefferson county, charging the crime of murder; a change of venue was granted to Stephens county, and the county attorney of Jefferson county there filed a new information, upon which defendant was tried and convicted.  Held, that the new information not having been filed in Jefferson county, the district court of Stephens county was without jurisdiction to try defendant thereon, and the proceedings subsequent to the filing of the new or so called amended information were null and void.

3.   **TRIAL—Argument—Comment on Change of Venue.**  Where in a criminal case, the venue has been changed, such fact is not a proper or legitimate subject of discussion by counsel for the prosecution in his argument to the jury.

4. **SAME.** It is error for the trial court to allow counsel for the prosecution to read defendant's affidavit for a change of venue, and to comment upon the same in addressing the jury.

5. **TRIAL—Argument of Counsel—Time to Object—Duty of Court.** As a general rule. in order to make improper argument available as a ground for new trial, objection should be interposed at the time when the prejudicial statements are made; after verdict it comes too late. However, there are exceptions to the rule, and where private counsel assisting the county attorney in his closing argument to the jury abuses his privilege and makes statements of prejudicial facts outside the evidence, and appeals to prejudices irrelevant to the case, it is the duty of the court to stop him then and there, and it is error for the court not to instruct the jury to disregard such statements.

6. **SAME.** It is the duty of trial courts to interfere of their own motion in homicide cases where counsel for the prosecution in argument to the jury abuses his privileges by commenting on matters outside the record and outside the proof that are calculated to create prejudice against the accused.

*Appeal from District Court, Stephens County;*
*Cham Jones, Judge.*

Hattie Holcomb was convicted of murder, and she appeals.   Reversed and remanded.

*Bridges & Vertrees* and *Womack & Brown,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   Plaintiff in error, Hattie Holcomb, herein referred to as defendant, was convicted in the district court of Stephens county, on a change of venue from Jefferson county, of the crime of murder.   She has appealed from the judgment rendered upon such conviction.

It appears from the record that on the 25th day of March, 1915, an information was filed in the district court of Jefferson county, charging that in said county, on the 14th day of March, 1915, the said Hattie Holcomb did kill and murder Sam Holcomb, by shooting him with a pistol.   On defendant's application the court granted a change of venue

to Stephens county, and on the 3d day of April, 1915, the papers in said cause were transmitted by the court clerk of Jefferson county to the court clerk of Stephens county. On the 5th day of April the county attorney of Jefferson county filed an amended information in the district court of Stephens county charging that the said Hattie Holcomb did aid, abet, assist, counsel and advise the death of said Sam Holcomb by then and there aiding, abetting, advising and assisting one Henry Self to do, commit, and perpetrate said murder. A general demurrer was interposed to the amended information, which was overruled. Thereupon defendant was arraigned and pleaded not guilty.

In the view we have taken of the disposition necessary to be made of this case, there is no occasion for a discussion of the facts in evidence, further than to say that defendant's husband, Sam Holcomb, was shot and killed at their home about 9 o'clock p. m., on March 14, 1915. Henry Self, who it appears was by a separate information charged with the crime, and who upon his arraignment pleaded guilty and was sentenced to life imprisonment, was brought from the penitentiary and as a witness for the state testified that he killed Sam Holcomb by shooting him with a pistol, that he had been criminally intimate with defendant, and that she advised him to kill her husband.

The filing of the new or so-called amended information in the district court to which the change of venue was granted, presents a question of jurisdiction, which is not assigned as error, but it is now insisted, upon behalf of defendant, that the new information was unlawfully filed, in that the Constitution and laws of this state do not authorize the county attorney of Jefferson county to file in Stephens county a new or amended information in a case there pending on a change of venue. It appears from the record that an

entirely new information was filed in the district court of Stephens county by the county attorney of Jefferson county, and it had not been filed in the district court of Jefferson county.

The Constitution of Oklahoma (article 2, sec. 17) provides that prosecutions for felonies shall be by indictment, or may be by information after the accused has had a preliminary examination before an examining magistrate, or having waived the same, and they are concurrent remedies. *In re McNaught,* 1 Okla. Cr. 528, 99 Pac. 241. An indictment cannot be amended as to matters of substance except by the grand jury of the county in which the crime was committed, and where a change of venue is had, an indictment must be amended, if at all, in the county from which it came. The same rules of procedure which obtain in prosecutions by indictment shall obtain in prosecutions by information. When an order for a change of venue shall be made the statute requires the clerk of the county in which the cause is pending to—

"make out, and within ten days transmit to the county to which the action is removed a certified copy of the order of removal and the record, and shall transmit the pleadings, including the undertaking for the appearance of the defendant, and of the witnesses, and the cause must be docketed and stand for trial at the first term of the court after the cause has been transferred." Proc. Crim., sec. 5817, Rev. Laws 1910.

"If it is necessary to have any * * * original pleadings or other papers before such court, the court from which the action is removed must at any time, upon the application of the county attorney or the defendant, order such papers or pleadings to be transmitted by the clerk, a certified copy thereof being retained." Proc. Crim., sec. 5821, Rev. Laws 1910.

In this state all crimes are statutory, and the practice and procedure in the prosecution thereof, including the form of the accusation and the manner in which, and by whom, preferred, is for the Legislature to determine, except when restrained by the state or federal Constitution, and we have no statute authorizing the county attorney of one county to file an information in any county other than his official county. Here the so-called amended information recites:

"Now comes P. T. Hamilton, the duly qualified and acting county attorney in and for Jefferson county, state of Oklahoma, and gives the district court of Stephens county, and state of Oklahoma to know and be informed that one Hattie Holcomb did, in Jefferson county," etc.

The principle on which our decision must rest was stated and discussed by Sherwood, P. J., in *State v. Bartlett*, 170 Mo. 658, 71 S. W. 148, 59 L. R. A. 761. He said:

"The like considerations induce comment on the amended information filed in this cause in the circuit court of Lewis county, by the prosecuting attorney of Scotland county. By the amendment to our Constitution adopted in 1900, it is provided that: 'No person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information, which shall be concurrent remedies.' Prior to the adoption of this amendment, as is well known, felony could only have been prosecuted by indictment. When this was the constitutional rule and limitation, it was decided by this court, in *Slater's Case*, 72 Mo. 102, followed by many subsequent cases, that, though authorized by statute, the grand jury of one county could not find an indictment for a crime committed in another county. Now the amendment declares that both these forms of procedure shall be 'concurrent remedies'; if concurrent, then a prosecuting attorney of one county would have no greater power over an information which he could file in his own county than would a grand jury over an indictment they had found in their own county. As they could not find one for a crime

done outside of their own county, neither could he file an information outside of his own county for a crime done in his own county, unless the Constitution so permitted. And the mere fact that the general statute commands a prosecuting attorney to follow to other counties indictments and informations originating in his county does not enlarge his powers as to amending an information any more than it does amending an indictment. The only way to get a new indictment is to have new action taken by the grand jury of the original county, and the only way to have a new information is to have the amended or new information filed in the original county. This point was not raised in the motion in arrest, but, being a matter of record, and a question of jurisdiction, we have thought best to notice it."

The new information upon which defendant was tried having been filed in Stephens county without authority of law, it follows that the whole proceedings subsequent to the filing of the new or so-called amended information in Stephens county were null and void, and for the reasons stated the district court was without jurisdiction to try the new information or to render the judgment appealed from.

One of the grounds of the motion for new trial, and upon which error is assigned, is:

"That defendant was prevented from having a fair and impartial trial as guaranteed to her by law by reason of the conduct of counsel for the state in his closing argument, in which he read to the jury defendant's petition and affidavit on file in this cause, by which this defendant asked and obtained a change of venue from Jefferson county to Stephens county, which conduct of said counsel was highly improper and prejudicial to the rights of this defendant, and other improper remarks made by counsel for the state in said argument."

In view of another trial, and as this is the first time that this question has come before this court, we are asked to pass upon it.

It appears in the record that Mr. John M. Stanley, private counsel who assisted the county attorney and who made the closing argument for the state, in the course of his address used the following language:

"What did she do after she was charged with this crime? They say that from the fact that this woman lived in that county a long time and worked and struggled that she is not guilty. All right, she has been down there, we will say 15 years, been a powerful good woman before this trouble came up, never was a bit of suspicion against her character, and then she is charged with the murder of her husband and haled into court right down there where she had made a reputation for being a praying mother, right down there where she had made a reputation for being a good woman, living there for the last 15 years, and then she came into court and swore she could not get a fair trial down there among the people with whom she had associated, and with whom she had worked from day to day. Here is what this mother said: 'In the District Court of Jefferson County, State of Oklahoma, Plaintiff, v. Hattie Holcomb, Defendant. Petition for change of venue. Comes now the defendant, Hattie Holcomb, and moves the court that she be granted a change of venue in said cause, and that she be sent to some other county in this judicial district for trial, and for reason states.' Now, mind you, she lived in Jefferson county, this mother who prays and attends meeting and has standing in the Baptist Church comes and says when she is charged with crime that she wants to be taken from the neighborhood in which she has prayed and in which she has worked for the following reasons: Now listen to these reasons. Counsel said: 'Stanley will call your attention to this. I will forget lots of things and he will call your attention to it.' He says she has prayed, and that she is a mother, and that she has fellowship in the Baptist Church, and that she is innocent. Here is what she said. 'Been living down there 15 or 20 years.' Suppose your wife was arrested for crime out in your community, and when she was haled into

court, and when the charge was brought up against her she would swear, 'I have lived here for 20 years, and demeaned myself like a Southern lady, but still I can't get justice here in the county where the crime was committed.' You know that if you were to tell me that as a juror that my wife had been living over 20 years and prayed and paid the preacher and demeaned herself like a lady ought to, and then she came up and said, 'I can't get a fair trial here,' what would I think? What did you want to do it for? You lived down there 15 years, paid the preacher, and prayed to God for mercy for the conversion and salvation of your husband—all of this had been done—and she got up and said, 'Great God Almighty, I can't get a fair trial down here where I was put down by Him who controls the destiny of the world.' That within itself ought to be enough for this jury to write a verdict of guilty. Why, Great God! let's apply the rule of common sense. Just say, his honor is not here, and the county attorney not here, say the woman was gone with her baby, and there was a man here in her stead, and say you have lived in a community 15 years and been a good man and paid the preacher and paid your debts, and say that a wrongful charge had been brought against you and you were innocent; would you move it to another county to be tried, where you didn't know a man, woman, or child; would you do it? Now, that is all tommyrot, and when my friend Bridges, who is a fine, elegant lawyer, said: 'This is a powerfully good woman; she has been a praying pillar in the church for 15 years'; but still when she was charged with crime she swore she couldn't get a fair and impartial trial. You ought to apologize to this court. She swore she could not get this fair and impartial trial. Let's see what her reasons were."

Here counsel reads to the jury defendant's affidavit for a change of venue. He then proceeded to enlarge upon the theme, concluding as follows:

"It would be a sad commentary upon the motherhood of the state of Oklahoma if they lived in a community for 15

years and charged with a crime and they were innocent, if the mother would make an affidavit that she wanted the case to be carried to your county of Stephens, where she had not established a reputation, and where they didn't know anything about her acts; would you want your mother or wife to do that?"

It is hardly necessary to say that the character and course of argument indulged in by counsel for the state was grossly improper and highly prejudicial to the substantial rights of the defendant. We think it was such a palpable abuse of the privilege of counsel as, without a disregard of all rules governing the fair administration of justice, cannot be excused. The defendant, as was her constitutional right, applied for a change of venue, and it was granted. Her affidavit for change of venue was no part of the evidence in the case, and should not have been read to the jury or referred to in any way, and counsel went beyond the legitimate scope of all argument by thus commenting on facts not in evidence. Defendant was entitled as of right to have the question of her guilt determined solely upon the evidence adduced upon the trial, and such argument, if it could be called argument, should not have been tolerated for a moment. The cases uniformly hold that the proceeding upon an application for a change of venue in a criminal case are inadmissible in evidence against the accused. In *State v. Phillips & Ross*, 24 Mo. 475, it appeared that the attorney for the state read to the jury the application for a change of venue, and the affidavits of the defendants in support of it. The court said:

"We see no warrant in the law for reading, against the protest of the accused, the proceedings on the application for the change of venue and the order thereupon. Whether there was a change of venue or not, or whether it was properly awarded or not, was a question with which the jury had

nothing to do; and it is surprising that, against the objection of the accused, the attorney for the state should have done such a thing. What motive could there be to such an act but the hope of reproducing that very state of things from which the law in its mercy had rescued the defendants? It was making the law guilty of the absurdity of awarding a change of venue, and at the same time depriving the party of the advantage expected from it, a fair and impartial trial."

In *Shamburger v. State*, 24 Tex. App. 433, 6 S. W. 540, it appeared that the prosecuting attorney read in evidence to the jury the order changing the venue. The court said:

"In this case the fact in issue was the guilt of the defendant of the crime with which he was charged. The order changing the venue in the cause in no way related to that issue. It tended in no degree to prove or disprove said issue. But, notwithstanding its irrelevant character, its recitals were well calculated to prejudice the minds of the jury against the defendant. Hunt county was the home of the defendant, and the county in which the alleged offense was committed. The order showed that it was upon his motion that the cause had been transferred for trial from the county of his home; from the people among whom he resided, and who were acquainted with him, to another county, and upon the grounds that in his own county, and among those best acquainted with him and with the facts of the alleged crime, there existed against him such a prejudice as would prevent him from having a fair and impartial trial in said county, and that there existed against him in said county a combination of influential persons, etc. A recital of these facts to a jury would naturally and certainly prejudice their minds against the defendant. A defendant is entitled to a verdict on competent evidence, and the admission of incompetent evidence, such as might influence a jury, requires a conviction to be set aside, even though there be sufficient legal evidence to sustain it."

In *State v. Smith,* 75 N. C. 306, it appeared that the prosecuting attorney in addressing the jury used the following language:

"The defendant was such a scoundrel that he was compelled to move his trial from Jones county to a county where he was not known."

The court said:

"The purpose and natural effect of such language was to create a prejudice against the defendant, not arising out of any legal evidence before them; for the jury were precluded from inquiry into the causes or motives for moving the trial, and even from the knowledge whether the trial was moved by the state or the defendant. * * * In *Dennis v. Haywood,* 63 N. C. 53, the course here pursued by the solicitor is strongly reprobated. 'Suppose,' said the court, 'a defendant is to be tried for his life, and to escape unreasonable prejudices in one county he removes his trial to another; the fact that he does so may be used to excite the prejudice that he is endeavoring to escape justice, and thus he would escape the prejudices of one community to find them intensified in another. Would the court allow the fact to be given in evidence or commented on by the counsel? Certainly not.'"

Counsel for the state insist that for two reasons such references as were made to the petition for a change of venue do not constitute reversible error: First, defendant by her own testimony and the testimony of her witnesses had placed her character in issue; second, no objection was made when Mr. Stanley was making this speech. The evidence of defendant's reputation and previous good character properly referred to a period prior to the commission of the crime charged and not subsequent thereto. It follows that the argument as made was totally irrelevant to any issue upon the trial.

As a general rule, in order to make improper argument available as a ground for new trial, objection should be interposed at the time when the prejudicial statements are made; after verdict it comes too late. However, there are exceptions to the rule, and where counsel for the prosecution abuses his privilege and makes statements of material or prejudicial facts outside the evidence, or appeals to prejudices irrelevant to the case, it is the duty of the court to stop him then and there, and it is error for the court not to instruct the jury to disregard such statements. It is the duty of trial courts to see that no injustice is done to a person accused of crime on trial therefor by the improper conduct of counsel for the state, and to see that such person is tried according to the law and the evidence, and this duty is emphasized in a capital case. This is due to truth and justice; and is necessary in order to preserve the rules regulating the conduct of trials in courts of justice and the benefit of an impartial trial by an impartial jury to the accused. With the preservation of these rules and the maintenance of this right the courts and their officers are charged, and it must be insisted upon that they are not violated.

For the reason first stated, the judgment of the district court of Stephens county is reversed, and the cause remanded to that court for further proceedings in accordance with the views herein expressed.

ARMSTRONG and BRETT, JJ., concur.